UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In Re:                      STEPHEN FOX,
Address:                    10806 Henderson Road
                            Fairfax Station, VA 22039

    Debtor.                                          Case No: 14-13248-BFK

KONDAUR CAPITAL CORPORATION, AS SEPARATE TRUSTEE OF
MATAWIN VENTURES TRUST SERIES 2013-4,

    Plaintiff,                                          Chapter 13

v.

STEPHEN FOX,
JUDY E. FOX, Co-Debtor,
THOMAS P. GORMAN, Trustee,

    Defendants.

<u>NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. SECTION
362 (d) AND 11 U.S.C. SECTION 1301 (c) (3)</u>

    Kondaur Capital Corporation, as Separate Trustee of Matawin Ventures Trust Series 2013-4, a creditor in this case, have filed papers with the Court to obtain relief from the provisions of the above stated automatic stays of the Bankruptcy Code with regard to certain property more particularly described in those papers which are attached.

    <u>Your rights may be affected.</u>  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)

    If you do not want the Court to grant these creditors relief from the provisions of the automatic stay of the Bankruptcy Code, or if you want the Court to consider your views on the Motion for Relief from the Automatic Stay, then, on or before November 5, 2014, you, the above-named Debtor and trustee and/or your attorney(s) and, on or before November 12, 2014, you, the above-named defendant co-debtor(s) and/or your attorney(s) must:

    File with the Court, at the address shown below, a written response pursuant to Local Bankruptcy Rules 4001 (a)-1(C) and 9013-1(H).  If you mail your response to the Court for filing, you must mail it early enough so the Court will receive it on or before the date stated above.

          William C Redden, Clerk
          U.S. Bankruptcy Court
          Alexandria Division
          200 South Washington Street
          Alexandria, VA 22314

You must also mail a copy of any such response to:

Melissa M. Watson Goode, Esquire
Robyn D. Pepin, Esquire
Kelly Rae Gring, Esquire
Glasser and Glasser, P.L.C.
Crown Center, Suite 600
580 East Main Street
Norfolk, Virginia 23510

**Attend the preliminary hearing scheduled to be held on November 26, 2014 at 09:30 AM in Courtroom I, U.S. Bankruptcy Court, 200 South Washington Street, 2nd Floor, Alexandria, VA 22314.**

If no timely response has been filed opposing the relief requested, the Court may grant the relief requested in the Motion for Relief from Stay.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion for Relief from Automatic Stay and may enter an Order granting that relief.

Date: October 22, 2014               Signature: /s/ Melissa M. Watson Goode_____
                                     Name:    Melissa M. Watson Goode, VSB #73516
                                     Robyn D. Pepin, VSB #77784
                                     Kelly Rae Gring, VSB #75999
                                     Glasser and Glasser, P.L.C.
                                     Crown Center, Suite 600
                                     580 East Main Street
                                     Norfolk, Virginia 23510

CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2014, a true copy of the foregoing Notice of Motion for Relief from the Automatic Stay was submitted for electronic transmittal to Nathan Andrew Fisher, Attorney for Debtor, and to Thomas P. Gorman, Trustee, and was mailed, first class, postage prepaid to Stephen Fox, Debtor, at 10806 Henderson Road, Fairfax Station, VA 22039 and to Judy E. Fox, Defendant Co-Debtor, at 10806 Henderson Road, Fairfax Station, VA 22039.

                                     /s/ Melissa M. Watson Goode_____
                                     Melissa M. Watson Goode, VSB #73516
                                     Robyn D. Pepin, VSB #77784
                                     Kelly Rae Gring, VSB #75999
                                     Glasser and Glasser, P.L.C.
                                     Crown Center, Suite 600
                                     580 East Main Street
                                     Norfolk, Virginia 23510

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In Re:

STEPHEN FOX,

     Debtor.                                           Case No: 14-13248-BFK

KONDAUR CAPITAL CORPORATION, AS SEPARATE
TRUSTEE OF MATAWIN VENTURES TRUST SERIES
2013-4,

     Plaintiff,                                  Chapter 13

v.

STEPHEN FOX,
JUDY E. FOX, Co-Debtor,
THOMAS P. GORMAN, Trustee,

     Defendants.

### MOTION FOR ORDER CONFIRMING TERMINATION OF AUTOMATIC STAY AS TO DEBTOR PURSUANT TO 11. U.S.C. SECTION 362(C)(3)(A) AND MOTION FOR RELIEF FROM CO-DEBTOR STAY PURSUANT TO 11 U.S.C. SECTION 1301(c)(3)

**TO STEPHEN FOX AND THOMAS P. GORMAN, DEFENDANTS:**

     **Pursuant to Rule 4001(a)-1(C) of the Local Rules of the United States Bankruptcy Court of the Eastern District of Virginia, you have fourteen (14) days from October 22, 2014, the date of service of this Motion upon you, to file a written response thereto and you must file such response with the Clerk of the United States Bankruptcy Court, Alexandria Division, 200 South Washington Street, Alexandria, VA 22314 and serve a copy of same upon the Plaintiff's attorneys, Melissa M. Watson Goode, Robyn D. Pepin and/or Kelly Rae Gring, at Crown Center, Suite 600, 580 East Main Street, Norfolk, VA 23510.**

Melissa M. Watson Goode, VSB #73516
Robyn D. Pepin, VSB #77784
Kelly Rae Gring, VSB #75999
Glasser and Glasser, P.L.C.
Crown Center, Suite 600
580 East Main Street
Norfolk, Virginia 23510
(757) 625-6787
Attorneys for Kondaur Capital Corporation, as Separate Trustee of Matawin Ventures Trust Series 2013-4

**TO JUDY E. FOX, DEFENDANT CO-DEBTOR:**

**Pursuant to Rule 4001(a)-1(H)(2) of the Local Rules of the United States Bankruptcy Court of the Eastern District of Virginia, you have twenty-one (21) days from October 22, 2014, the date of service of this Motion upon you, to file a written response thereto and you must file such response with the Clerk of the United States Bankruptcy Court, Alexandria Division, 200 South Washington Street, Alexandria, VA 22314 and serve a copy of same upon the Plaintiff's attorneys, Melissa M. Watson Goode, Robyn D. Pepin and/or Kelly Rae Gring, at Crown Center, Suite 600, 580 East Main Street, Norfolk, VA 23510.**

TO THE HONORABLE ROBERT G. MAYER:

Your Plaintiff, Kondaur Capital Corporation, as Separate Trustee of Matawin Ventures Trust Series 2013-4, respectfully represents as follows:

1.      That this is a core proceeding within the meaning of the Bankruptcy Code and Rules.

2.      That on September 1, 2014, the above-named Debtor filed a Petition in this Court.

3.      That Thomas P. Gorman was appointed Trustee of the property, has qualified and is now acting.

4.      That at the time of the filing of the Debtor`s Petition herein, the Debtor had an ownership interest in certain real property and improvements commonly known as 10806 Henderson Road, Fairfax Station, VA 22039, located in the County of Fairfax, VA, more particularly described as follows:

> Lot Fourteen (14A), HARVEY FOX PROPERTY, as the same appears duly dedicated, platted and resubdivided in Deed Book 13142 at page 366, among the land records of Fairfax County, Virginia.

5.      That the Plaintiff is the holder of a Deed of Trust Note dated March 28, 2007, in the original principal amount of $550,000.00 with variable interest thereon from said date at the rate of 2.25 percentage points above the Current Index as established in said Note, secured by a

Deed of Trust on said real property and improvements recorded in the Clerk's Office of the

Circuit Court of the County of Fairfax, VA, on which there is an unpaid approximate payoff

balance owing to the Plaintiff of $712,928.57 as of October 17, 2014, exclusive of accruing

interest, subsequently accruing late charges, and the Plaintiff's attorney's fees and costs incurred

incident to the filing and resolution of this Motion.  True copies of said Deed of Trust Note and

Deed of Trust are attached hereto and incorporated by reference as Exhibits "A" and "B",

respectively.

6.      That there is no equity in said real property and improvements for the Debtor`s

Bankruptcy estate based upon the valuation of said property established by the County of Fairfax

tax assessor of $724,440.00 giving consideration for the Deed of Trust lien on said property held

by the Plaintiff and the other lienholder identified in the Debtor`s Chapter 13 plan and adjusted

for costs of sale of said property as a result of said valuation.

7.      That within one year of the filing of the Debtor's petition herein, the Debtor filed

a Chapter 13 Petition, Case number 14-11527-RGM, on April 24, 2014, which case was

dismissed on June 11, 2014 for failure to appear at the Meeting of Creditors pursuant to Local

Rule 2003-1. As contemplated in a determination under 11 U.S.C. Section 362(c)(3)(A) as to

termination of the automatic stay, said case was notably not dismissed under 11 U.S.C. Section

707(b). A copy of the docket of this Court of the aforesaid case confirming the aforesaid

dismissal and the reason therefore is attached herein as Exhibit "C".

8.      That pursuant to the provisions of 11 U.S.C. Section 362(c)(3)(A), if a single or

joint case is filed by or against an individual debtor under Chapter 13 and if, at the time of such

filing, a single or joint case of said debtor was pending within the previous year but was

dismissed and was not a case refiled after a dismissal under 11 U.S.C. Section 707(b), the

automatic stay of 11 U.S.C. Section 362(a) terminates as to the Debtor on the 30th day after the filing of the new case unless extended by the Court order pursuant to 11 U.S.C. Section 362(c)(3)(B).

9.      That, as can be clearly determined from the Debtor's case filing history as hereinabove alleged and by the copy of this Court's docket attached hereto, the Debtor's present Chapter 13 case constitutes the second case filed by the Debtor since April 2014, and also constitutes the filing of an individual case under Chapter 13 of the Bankruptcy Code when at least one prior case of the Debtor was pending within the previous year of such filing and was dismissed. Furthermore, the Debtor failed to move this Court for an extension of the automatic stay within the first 30 days of the case, as required by 11 U.S.C. § 362(c)(3)(B), an Order has not been entered extending the automatic stay, and a Motion to Reinstate said stay is not currently pending before this Court. Accordingly, it is submitted that in accordance with the provisions of 11 U.S.C. Section 362(c)(3)(A), the automatic stay has terminated as to the Debtor's interest in the present Chapter 13 case as a matter of law as of October 1, 2014, which date was the 30th day after the filing of the instant case.

10.      That further, it appears that the Debtor is not proceeding in good faith inasmuch as the Debtor has failed to commence plan payments, with the first of said payments being due on October 1, 2014, has insufficient income to support a confirmable plan providing for the treatment of this creditor's pre-petition arrearages in the approximate amount of $173,222.20, and has failed to make the first post-petition mortgage payment due this creditor as of October 1, 2014 in accordance with the terms of the proposed plan. Furthermore, given the Debtor's re-filing of the instant bankruptcy on the eve of the scheduled foreclosure sale, coupled with the deficiencies as stated above, it is submitted that this most recent filing is an attempt by the

Debtor to hinder and delay this creditor in lawfully executing on the foreclosure process and lacks any indicia that same will result in a successful reorganization of this Debtor's obligations.

11.     That Defendant, Judy E. Fox, is a co-maker relative to the aforementioned Deed of Trust and the Plaintiff is prevented from pursuing its right to stay relief with regard to the real property and improvements unless relief from stay is granted to the Plaintiff against said Defendant.

12.     That as to the Debtor Defendant, in accordance with 11 U.S.C. 362(c)(3)(A) as hereinabove alleged, Plaintiff requests the entry of an Order by this Court confirming that the automatic stay is not effective in this case pursuant to 11 U.S.C. Section 362(j).

13.     That the facts hereinabove alleged also constitute cause for a grant of stay relief in favor of the Plaintiff pursuant to the provisions of 11 U.S.C. Section 1301(c)(3).

WHEREFORE, Kondaur Capital Corporation, as Separate Trustee of Matawin Ventures Trust Series 2013-4, by counsel, respectfully prays that an Order be entered herein pursuant to the provisions of 11 U.S.C. Section 362(c)(3)(A) confirming that the automatic stay of 11 U.S.C. Section 362(a) has terminated as of October 1, 2014, granting it relief from the provisions of the automatic stay pursuant to U.S.C. Section 1301 with regard to the above-described real property and improvements, including any act necessary to recover possession of same from the Co-Debtor, and for such other relief as may be appropriate incident to such request.

KONDAUR   CAPITAL   CORPORATION
AS SEPARATE TRUSTEE OF MATAWIN
VENTURES TRUST SERIES 2013-4

By /s/ Melissa M. Watson Goode_____
    Of Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 22, 2014, a true copy of the foregoing Motion for Order Confirming Termination of Automatic Stay Pursuant to 11 U.S.C. Section 362(c)(3)(A) and and Motion for Relief from Co-Debtor Stay Pursuant to 11 U.S.C. 1301(c)(3)was submitted for electronic transmittal to Nathan Andrew Fisher, Attorney for Debtor, and to Thomas P. Gorman, Trustee, and was mailed, first class, postage prepaid to Stephen Fox, Debtor, at 10806 Henderson Road, Fairfax Station, VA 22039 and to Judy E. Fox, Defendant Co-Debtor, at 10806 Henderson Road, Fairfax Station, VA 22039.

/s/ Melissa M. Watson Goode
Melissa M. Watson Goode, VSB #73516
Robyn D. Pepin, VSB #77784
Kelly Rae Gring, VSB #75999

CERTIFIED TRUE COPY

Loan No.: ████

# ADJUSTABLE RATE NOTE

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.**

| March 28, 2007 | KINGSTOWNE | Virginia |
|---|---|---|
| *[Date]* | *[City]* | *[State]* |

**10806 HENDERSON ROAD, FAIRFAX STATION, VA 22039**
*[Property Address]*

**1.     BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$550,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **SUNTRUST MORTGAGE, INC..**
I will make all payments under this Note in the form of cash, check or money order.
   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.     INTEREST**

   Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.250%**. The interest rate I will pay will change in accordance with Section 4 of this Note.
   The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.     PAYMENTS**
**(Please check box for interest-only payments.)**
☒ I will make a payment consisting only of the interest due on the unpaid principal balance of this Note beginning on the first day of **June, 2007** and on the first day of each month thereafter until the first day of **May, 2017**. Thereafter, I will pay principal and interest by making a payment every month as provided below.

   **(A)   Time and Place of Payments**
   I will pay principal and interest by making a payment every month.
   I will make my monthly payment on the first day of each month beginning on **June, 2017**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **May 1, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at **P.O. BOX 79041, BALTIMORE, MD 21279–0041** or at a different place if required by the Note Holder.

---

Virginia Adjustable Rate Note - Single Family
Proprietary W0211                             Page 1 of 5                              27279VA 06/04


Any areas where this is present
represent redacted information.



EXHIBIT

*A*

**(B)  Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $2,406.25. This amount may change.
**(C)  Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A)  Change Dates**
The interest rate I will pay may change on the first day of May, 2014, and on that day every  12 month thereafter. Each date on which my interest rate could change is called a "Change Date."
**(B)  The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is **THE AVERAGE OF INTERBANK OFFERED RATES FOR ONE YEAR U.S. DOLLAR DENOMINATED DEPOSITS IN THE LONDON MARKET ("LIBOR"), AS PUBLISHED IN THE WALL STREET JOURNAL.**.
The most recent Index figure available as of the date ☒ 45 days ☐ 15 days ☐ first business day of the month immediately preceding the month in which the Change Date occurs ☐                    before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.
**(C)  Calculation of Changes**
**(Please check box for interest-only period.)**
☒ The Interest-Only Period is the period from the date of this Note through May, 2017.  For the Interest-only Period, after calculating my new interest rate as provided below, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.
The period after the Interest-Only Period is the Amortization Period. For the Amortization Period, after calculating my new interest rate as provided below, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
Before each Change Date, the Note Holder will calculate my new interest rate by adding  **Two and 250/1000ths** percentage points (**2.250%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
**(D)  Limits on Interest Rate Changes**
**(Please check appropriate boxes.)**
☐  (1)  _____ .

☐  (2)  There will be no maximum limit on interest rate changes.

☒  (3)  My interest rate will never be greater than **10.250%**.

☒  (4)  My interest rate will never be less than **2.250%**.

---

Virginia Adjustable Rate Note - Single Family
Proprietary W0211                              Page 2 of 5                        27279VA 06/04



Any areas where this is present
represent redacted information.

☐ (5) The interest rate I am required to pay at the first Change Date will not be greater than
_____ % or less than _____ %.

☐ (6) My interest rate will never be increased or decreased on any single Change Date by more than
_____ percentage points from the rate of interest I have been paying for the preceding
period.

☒ (7) The interest rate I am required to pay at the first Change Date will not be greater than 10.250% or
less than 2.250%. Thereafter, my interest rate will never be increased or decreased on any single
Change Date by more than 2.000 percentage points from the rate of interest I have been paying for the
preceding 12 months. My interest rate will never be greater than 10.250%.

**(E)  Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly
payment beginning on the first monthly payment date after the Change Date until the amount of my monthly
payment changes again.

**(F)  Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of
my monthly payment before the effective date of any change. The notice will include information required by law to
be given to me and also the title and telephone number of a person who will answer any question I may have
regarding the notice.

**5.     BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only
is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I
may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note
Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note
Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying
my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes
in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial
Prepayment is made during the period when my monthly payments consist only of interest, the amount of my
monthly payment, effective with my first monthly payment after the partial Prepayment, will automatically change
to reflect the principal reduction resulting from the partial Prepayment, and this new monthly payment will continue
until the next Change Date. If the partial Prepayment is made during the period when my monthly payment consists
of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first
Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be
offset by an interest rate increase.

**6.     LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the
interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits,
then: ( a ) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;
and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note
Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct
payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.     BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charges for Overdue Payments**

**Any areas where this is present**
represent redacted information.

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.     GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.     OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

**10.     WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor, and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.     UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Virginia Adjustable Rate Note - Single Family
Proprietary W0211                                        Page 4 of 5                                        27279VA 06/04



Any areas where this is present
represent redacted information.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Stephen M Fox_

_____ (Seal)  _____ (Seal)
STEPHEN M FOX              -Borrower                              -Borrower

_____ (Seal)  _____ (Seal)
                          -Borrower                              -Borrower

**Without Recourse**
**PAY TO THE ORDER OF**

[Sign Original Only]

SUNTRUST MORTGAGE INC.

BY _Martha S Gates_

Martha S. Gates
Assistant Vice President



Without Recourse
PAY TO THE ORDER OF

SunTrust Mortgage, Inc.

Deborah P. Ellis, Vice President

Virginia Adjustable Rate Note - Single Family
Proprietary W0211                    Page 5 of 5                    27279VA 06/04

**Any areas where this is present represent redacted information.**

DMZ Cover Sheet 2.0     http://166.94.9.156/coversheet/cover_request.cfm

# Fairfax County Land Records
# Cover Sheet

**Instruments**
   TRUST

**Grantor(s)**
   FOX, STEPHEN M _I_N ,  FOX, JUDY E _I_N

**Grantee(s)**
   MILLER, JACKIE_I_T

| Consideration | 550000 | | Consideration % | 100 | |
|---|---|---|---|---|---|
| Tax Exemption | | | Amount Not Taxed | | |
| DEM Number | | | Tax Map Number | | |
| Original Book | 13142 | | Original Page | 366 | |
| Title Company | THE SETTLEMENT GROUP, INC. | | Title Case | K7030015 | |
| Property Descr. | LT 14A, HARVEY FOX PROP | | | | |
| Certified | No | Copies | 0 | Page Range | |



**Print Cover Sheet** |

1 of 1                                        3/29/2007 8:04 AM



## CERTIFIED TRUE COPY

| After recording please return to: | Prepared by: |
|---|---|
| **SUNTRUST MORTGAGE, INC.**<br>*[Company Name]* | **CHRIS SHIELDS**<br>*[Name of Natural Person]* |
| **RVW 5093**<br>*[Name of Natural Person]* | **SUNTRUST MORTGAGE, INC.**<br>*[Company Name]* |
| **1001 SEMMES AVENUE**<br>*[Street Address]* | **10467 WHITE GRANITE DR STE 104**<br>*[Street Address]* |
| **RICHMOND, VIRGINIA 23224**<br>*[City, State Zip Code]* | **OAKTON, VA 22124**<br>*[City, State Zip Code]* |

*Parcel Identification No.:* 087-3-01-0015A

*[Space Above This Line For Recording Data]*

Loan No.:

**PLEASE RETURN TO:**
The Settlement Group, Inc.
5695 King Centre Drive #102
Kingstowne, VA 22315
Tel 703-971-4701
Fax 703-971-4694

# DEED OF TRUST

MIN 100010402053863118

**\*STEPHEN M. FOX AND JUDY E. FOX, HUSBAND AND WIFE**

The following information, as further defined below, is provided in accordance with Virginia law:  This Deed of Trust is given by ~~STEPHEN M FOX, MARRIED~~ as Borrower (trustor), to JACKIE MILLER, as Trustee, for the benefit of "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns, as beneficiary.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)**     "Security Instrument" means this document, which is dated **March 28, 2007**, together with all Riders to this document.

**(B)**     "Borrower" is **STEPHEN M FOX, MARRIED**.  Borrower is the trustor under this Security Instrument.

**(C)**     "Lender" is **SUNTRUST MORTGAGE, INC.**.  Lender is a **corporation** organized and existing under the laws of THE COMMONWEALTH OF VIRGINIA.   Lender's address is **901 SEMMES AVENUE, RICHMOND, VA 23224**.

**(D)**     "Trustee" is **JACKIE MILLER**.  Trustee (whether one or more persons) is a Virginia resident and/or a United States or Virginia chartered corporation whose principal office is located in Virginia.  Trustee's address is **1001 SEMMES AVE, RICHMOND, VA 23224**, .

---

Virginia Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      MERS Modified Form 3047 01/01
—THE COMPLIANCE SOURCE, INC.—      Page 1 of 14      14301VA 88/00 Rev. 02/04
www.compliancesource.com      ©2004, The Compliance Source, Inc.

Grantor: FOX, STEPHEN M
DateTime: 04/03/2007 12:34:53
Book/Page: 19234/0081
Recorded in FAIRFAX COUNTY CIRCUIT COURT
TESTE: JOHN T. FREY

Grantee: MILLER, JACKIE
Instrument: 2007009480.022
No of Pages: 20

*Any areas where this is present represent redacted information.*

EXHIBIT

B

ALL-STATE LEGAL®

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. .MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** "Note" means the promissory note signed by Borrower and dated **March 28, 2007**. The Note states that Borrower owes Lender **Five Hundred Fifty Thousand and 00/100ths** Dollars (U.S. **$550,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **May 1, 2037** .The interest rate stated in the Note is 5.250%. If this Security Instrument is an adjustable rate mortgage loan, this initial rate is subject to change in accordance with the attached Adjustable Rate Rider.

**(G)** "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** "Loan" means the debt evidenced by the Note, plus interest; any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower *[check box as applicable]*:

☒ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ 1-4 Family Rider ☐ Revocable Trust Rider
☐ Other(s) *[specify]*

**(J)** "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** "Escrow Items" means those items that are described in Section 3.

**(N)** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**Any areas where this is present represent redacted information.**

**(P)** "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY OF FAIRFAX:

*[Type of Recording Jurisdiction]*     *[Name of Recording Jurisdiction]*
**SEE ATTACHED SCHEDULE A**

which currently has the address of **10806 HENDERSON ROAD**
*[Street]*

**FAIRFAX STATION,**               Virginia **22039**                    ("Property Address"):
*[City]*                         *[Zip Code]*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.





Any areas where this is present represent redacted information.

Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by



Any areas where this is present represent redacted information.

Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for *the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under* RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from



Any areas where this is present
represent redacted information.

the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

Virginia Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3047 01/01
—THE COMPLIANCE SOURCE, INC.—                    Page 6 of 14                    1430 1VA 02/00 Rev. 08/04
www.compliancesource.com                                                         ©2004, The Compliance Source, Inc.



Any areas where this is present
represent redacted information.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or



Any areas where this is present
represent redacted information.

obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)** Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

**(b)** Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance,



 Any areas where this is present represent redacted information.

to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party," means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or





Any areas where this is present represent redacted information.

any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

   **13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

   Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

   **14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

   If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

   **15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.



Any areas where this is present
represent redacted information.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and



Any areas where this is present represent redacted information.

any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



**Any areas where this is present represent redacted information.**

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

Virginia Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3047 01/01
—THE COMPLIANCE SOURCE, INC.—          Page 13 of 14          14501VA 08/00 Rev. 05/04
www.compliancesource.com          ©2004, The Compliance Source, Inc.



Any areas where this is present represent redacted information.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                        STEPHEN M FOX                    -Borrower

_____        _____ (Seal)
                                        JUDY E. FOX                      -Borrower

                                        _____ (Seal)
                                                                         -Borrower

                                        _____ (Seal)
                                                                         -Borrower


State of Virginia            §
                             §
County of **FAIRFAX**        §
                                        STEPHEN M. FOX AND
                                        JUDY E. FOX
        Before me the undersigned authority, on this day personally appeared ~~STEPHEN M FOX~~ known to me (or proved to me through an identity card or other document) to be the person(s) whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

        Given under my hand and seal on this   28ᵗʰ   day of   March   , 2007

        (Seal)
                                        _____
                                        Notary Public

        Jeremy Brown
        NOTARY PUBLIC
        Commonwealth of Virginia        _____
        My Commission Expires 4/30/08   Print Name
                                        My Commission Expires:


Virginia Deed of Trust-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**        MERS Modified Form 3047 01/01
—THE COMPLIANCE SOURCE, INC.—                          Page 14 of 14                      1430IVA 08/00 Rev. 05/04
www.compliancesource.com                                                                 ©2004, The Compliance Source, Inc.





■ Any areas where this is present
  represent redacted information.

File No. ████

## Exhibit "A"

## Legal Description

Lot 14A, HARVEY FOX PROPERTY, as the same appears duly dedicated, platted and resubdivided in Deed Book 13142 at page 366, among the land records of Fairfax County, Virginia.

████ **Any areas where this is present** represent redacted information.

Our File No: ████

Loan No.: ▮▮▮▮▮▮▮

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this 28th day of **March, 2007**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **SUNTRUST MORTGAGE, INC., a corporation** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at

**10806 HENDERSON ROAD, FAIRFAX STATION, VA 22039**
(Property Address)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.     INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 5.250% The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.     INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **May, 2014** and on that day every 12 month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is: **THE AVERAGE OF INTERBANK OFFERED RATES FOR ONE YEAR U.S. DOLLAR DENOMINATED DEPOSITS IN THE LONDON MARKET ("LIBOR"), AS PUBLISHED IN THE WALL STREET JOURNAL.**

The most recent Index figure available as of the date: ☒ 45 days ☐ 15 days ☐ first business day of the month immediately preceding the month in which the Change Date occurs ☐ before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

---

Multistate Adjustable Rate Rider - Single Family                                        Rev. 03/04
Proprietary W0211                        **Page 1 of 4**                        67644MU 08/02 Rev. 09/04



**■** Any areas where this is present
represent redacted information.

**(C) Calculation of Changes**

**(Please check box for interest-only period.)**

☒ The "Interest-Only Period" is the period from the date of this Note through **May, 2017**. For the Interest-Only Period, after calculating my new interest rate as provided below, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

The period after the Interest-Only Period is the Amortization Period. For the Amortization Period, after calculating my new interest rate as provided below, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two and 250/1000ths** percentage points. **(2.250%)** to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
**(Please check appropriate boxes.)**

☐ (1)

☐ (2) There will be no maximum limit on interest rate changes.

☒ (3) My interest rate will never be greater than **10.250%**.

☒ (4) My interest rate will never be less than **2.250%**.

☐ (5) The interest rate I am required to pay at the first Change Date will not be greater than          % or less than          %.

☐ (6) My interest rate will never be increased or decreased on any single Change Date by more than          percentage points from the rate of interest I have been paying for the preceding period.

☒ (7) The interest rate I am required to pay the first Change Date will not be greater than **10.250%** or less than **2.250%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **2.000** percentage points from the rate of interest I have been paying for the preceding **12** months. My interest rate will never be greater than **10.250%**.



**Any areas where this is present**
**represent redacted information.**

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.     TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of the title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

———————————————————*[Signatures on Following Page]*———————————————————

**Any areas where this is present represent redacted information.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
STEPHEN M FOX              -Borrower

_____ (Seal)
JUDY E. / FOX              -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower





Any areas where this is present
represent redacted information.

Assessor's/Tax ID No. 087-3-01-0015A
Recording Requested By:
SUNTRUST MORTGAGE, INC.

When Recorded Return To:

Oliver Holmes
SUNTRUST MORTGAGE, INC.
1001 SEMMES AVENUE
RVW 5003
RICHMOND, VA 23224

---

### CORPORATE ASSIGNMENT OF DEED OF TRUST

Fairfax, Virginia
SELLER'S SERVICING #

MERS #                    SIS #: 1-888-679-6377

Date of Assignment: August 23rd, 2011
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. AS NOMINEE FOR SUNTRUST MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS at 1901 E VOORHEES STREET, SUITE C, DANVILLE, IL 61834
Assignee: SUNTRUST BANK at 303 PEACHTREE STREET N.E., ATLANTA, GA 30318

Executed By: STEPHEN M. FOX AND JUDY E. FOX HUSBAND AND WIFE To: SUNTRUST MORTGAGE, INC.
  Trustee: JACKIE MILLER Date of Trust: 03/28/2007 Recorded: 04/03/2007 in Book/Reel/Liber: 19234
Page: 0001 as Instrument No.: 2007009480.022 in Fairfax County, State of Virginia.

Assessor's/Tax ID No. 087-3-01-0015A

Property Address: 10806 HENDERSON ROAD, FAIRFAX STATION, VA 22039

   KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $550,000.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Deed of Trust.

   TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:
   MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. AS NOMINEE FOR SUNTRUST MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS
On August 23rd, 2011

By:
   Janine Ford
   Vice President

STATE OF Virginia
COUNTY OF Richmond (City)

On August 23rd, 2011, before me, Alicia J. Mickleberry                  a Notary Public in and for City of Richmond in the State of Virginia, personally appeared Janine Ford                  being duly sworn of MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. AS NOMINEE FOR SUNTRUST MORTGAGE, INC., personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Notary Expires:  /  /

(This area for notarial seal)

Prepared By: Oliver Holmes, SUNTRUST MORTGAGE, INC. 1001 SEMMES AVENUE, MERS ADMIN RVW 5003, RICHMOND, VA 23224 800-291-0607

---

Grantor: FOX, STEPHEN M
DateTime: 09/01/2011 08:12:12
Book/Page: 21826/1234
Recorded in FAIRFAX CIRCUIT COURT

TESTE: JOHN T. FREY

Grantee: MILLER, JACKIE
Instrument: 2011033239.013
# of Pages: 2

Any areas where this is present represent redacted information.

**Exhibit "A" – Legal Description**
For File: 1495212

All of that certain lot or parcel of land, together with improvements thereon, situate, lying and being in County of Fairfax, Virginia and more particularly described as follows:

Proposed Lot Fourteen (14A), Harvey Fox Property, as the same appears duly dedicated, platted and resubdivided in Deed Book 13142 , at Page 366, among the land records of Fairfax County, Virginia.

Parcel No: 0873 01 0015A
Commonly known as: 10806 Henderson Road, Fairfax Station, VA   22039

Fairfax County Circuit Court, CPAN Cover Sheet v2.0                    Page 1 of 1

# Fairfax County Circuit Court
## CPAN Cover Sheet v2.0

**Instruments**
ASSIGNMENT OF TRUST

**Grantor(s)**
SUNTRUST BANK_F_N, FOX, STEPHEN M_I_N, FOX, JUDY E_I_N

**Grantee(s)**
CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOC_F_N

| Consideration | | Consideration % | 100 | |
|---|---|---|---|---|
| Tax Exemption | | Amount Not Taxed | | |
| DEM Number | | Tax Map Number | 087-3- -01- -0015- A | |
| Original Book | 19234 | Original Page | 0001 | |
| Title Company | | | Title Case | |
| Property Descr. | LOT 14A, HARVEY FOX PROPERTY | | | |
| Certified | No | Copies | 0 | Page Range | |



Loan No ████████

RPC 087-3-01-0015A

## NOTICE OF CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, SUNTRUST BANK, WHOSE ADDRESS IS 303 PEACHTREE STREET N.E., ATLANTA, GA, 30318, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interest secured hereby, all liens, and any rights due or to become due thereon to : _Christiana Trust A Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust Series 2012-13_ _____, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)..

Said Deed of Trust dated 03/28/2007 made by STEPHEN M. FOX AND JUDY E. FOX to JACKIE MILLER, trustee, and recorded in Book 19234, Page 0001, Document # n/a in the amount of $550,000.00 in the office of the Recorder of (Town/City) FAIRFAX STATION, County of FAIRFAX, Virginia.

IN WITNESS WHEREOF, this Assignment is executed on _12 / 13 / 2012_ (MM/DD/YYYY).
SUNTRUST BANK

By: _Sandra Lancaster_
     Sandra Lancaster
     Vice President

STATE OF VIRGINIA
COUNTY OF RICHMOND
The foregoing instrument was acknowledged before me on _12 / 3 / 12_ (MM/DD/YYYY) by
_Sandra Lancaster_ as _VP_ of
SUNTRUST BANK. He/she/they is (are) personally known to me.

_Stephanie Pratt_
Notary Public - State of VIRGINIA
Commission expires: _1|31|2016_



```
STEPHANIE PRATT
Notary Public
Commonwealth of Virginia
7524344
My Commission Expires Jan 31, 2016
```

Prepared By/Return To:
James Love, 1001 Semmes Avenue RVW 5303 Richmond, VA 23224

SMAVR 180124██-@ DISNEY  CJ4400758   T2012114213   [PREP] FRMVA1

FOX
CARR

982
2012-13-PRIV

**Exhibit A**

Legal Description

Lot 14A, HARVEY FOX PROPERTY, as the same appears duly dedicated, platted and resubdivided in Deed Book 13142 at page 366, among the land records of Fairfax County, Virginia.

# Fairfax County Circuit Court
## CPAN Cover Sheet v2.0

**Instruments**
    ASSIGNMENT OF TRUST

**Grantor(s)**
    FOX, STEPHEN M _I_N, FOX, JUDY E _I_N, CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOC _F_N

**Grantee(s)**
    KONDAUR CAPITAL CORPORATION, AS SEPARATE TRUSTEE OF MATAWIN _F_N

| Consideration | | Consideration % | 100 | |
|---|---|---|---|---|
| Tax Exemption | | Amount Not Taxed | | |
| DEM Number | | Tax Map Number | 087-3- -01- -0015- A | |
| Original Book | 19234 | Original Page | 0001 | |
| Title Company | | | Title Case | |
| Property Descr. | LOT 14A, HARVEY FOX PROPERTY | | | |
| Certified | No | Copies | 0 | Page Range | |



WHEN RECORDED MAIL TO:
**Kondaur Capital Corporation -**
333 South Anita Drive, Suite 400
Orange, CA 92868
284705/7000038961

Prepared by Terri Le
**Kondaur Capital Corporation**
333 South Anita Drive, Suite 400
Orange, CA 92868

_____[Space Above This Line For Recording Data]_____

## ASSIGNMENT OF DEED OF TRUST

**FOR VALUE RECEIVED,** Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust, Series 2012-13, whose address is 1610 E. St. Andrew Place, Ste B150, Santa Ana, CA 92705, hereby assigns, and transfers to Kondaur Capital Corporation, as Separate Trustee of Matawin Ventures Trust Series 2013-4, whose address is 333 South Anita Drive, Ste 400, Orange CA 92868, all its right, title and interest in and to that certain Deed of Trust executed by Stephen M. Fox and Judy E. Fox, Husband and Wife, with an original principal amount of $550,000.00 to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for SunTrust Mortgage, Inc. and bearing the date of March 28, 2007 and recorded as Instrument # 2007009480.022 in Book 19234, Page 0001 on April 03, 2007 of Official Records in the County Recorder's office of FAIRFAX County, State of Virginia describing land therein as: See legal description attached hereto and made a part hereof as exhibit "A".

Commonly known as: 10806 HENDERSON RD, FAIRFAX STATION, VIRGINIA 22039
**Parcel Number: 0873 01 0015A**

*IN WITNESS WHEREOF,* the Assignor has caused these presents to be signed by its duly authorized officer this
16th day of January, 2014.

Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust, Series 2012-13, by Carrington Mortgage Services, LLC, as attorney-in-fact

By: _____
Name: Greg Schleppy
Title: Senior Vice President

Witness #1 _____     Witness #2 _____
Print Name: Leticia Macias               Print Name: Sandra magana

1

STATE OF CALIFORNIA          )
COUNTY OF ORANGE             )SS.

On  1-16-2014  before me  Irene Torres, Notary Public, personally appeared Greg Schleppy, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me and that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify that under penalty of perjury under laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

IRENE TORRES
COMMISSION #1974481
Notary Public - California
ORANGE COUNTY
My Commission Expires
APRIL 7, 2016

2

## Exhibit A
### Legal Description

Lot 14A, HARVEY FOX PROPERTY, as the same appears duly dedicated, platted and resubdivided in Deed Book 13142 at page 366, among the land records of Fairfax County, Virginia.

03/26/2014
RECORDED FAIRFAX CO VA
TESTE
CLERK

**FinMgt, DISMISSED, CLOSED**

## U.S. Bankruptcy Court
## Eastern District of Virginia (Alexandria)
## Bankruptcy Petition #: 14-11527-RGM

|  |  |
|---|---|
| | *Date filed:* 04/24/2014 |
| *Assigned to:* Robert G. Mayer | *Date terminated:* 06/27/2014 |
| Chapter 13 | *Debtor dismissed:* 06/11/2014 |
| Voluntary | *341 meeting:* 06/03/2014 |
| Asset | |

*Debtor disposition:* Dismissed for Other Reason

| | |
|---|---|
| ***Debtor*** | represented by **Nathan A. Fisher** |
| **Stephen Fox** | 3977 Chain Bridge Road, #2 |
| 10806 Henderson Road | Fairfax, VA 22030 |
| Fairfax Station, VA 22039 | (703) 691-1642 |
| FAIRFAX-VA | Fax : (703) 691-0192 |
| SSN / ITIN: xxx-xx-7923 | Email: Fbarsad@cs.com |

*Trustee*
**Thomas P. Gorman**
300 N. Washington St. Ste. 400
Alexandria, VA 22314
(703) 836-2226

*U.S. Trustee*
**Judy A. Robbins, 11**
Office of the U.S. Trustee - Region 4
115 South Union Street, Room 210
Alexandria, VA 22314
703-557-7176



| Filing Date | # | Docket Text |
|---|---|---|
| 04/24/2014 | <u>1</u><br>(9 pgs) | Voluntary Petition under Chapter 13 Filed by Nathan A. Fisher on behalf of Stephen Fox. (Fisher, Nathan) |
| 04/24/2014 | <u>2</u><br>(1 pg) | Certificate of Credit Counseling filed by Nathan A. Fisher on behalf of Stephen Fox. (Fisher, Nathan) |
| 04/24/2014 | 3 | U.S. Treasury receipt of Voluntary Petition under Chapter 13(14-11527) [misc,1188] ( 281.00) filing fee. Receipt number 19400985, amount $ 281.00. (Re: Doc#<u>1</u>) (U.S. Treasury) |

| | 4 | Meeting of Creditors: 06/03/2014, 12:30 PM, Office of the U.S. Trustee, 115 South Union Street, Suite 206, Alexandria, Virginia. Proofs of Claim due by 09/02/2014. Government Proofs of Claim due by 10/21/2014. Confirmation hearing: 07/09/2014, 09:30 AM, Judge Mayer's Courtroom, 200 South Washington Street, 2nd Floor, Courtroom I, Alexandria, VA. Interim Trustee: Thomas P. Gorman, . |
|---|---|---|
| 04/25/2014 | | |
| 04/28/2014 | 5 | LBR 1007-1 Schedule(s) and/or Statement and 3015-2 Chapter 13 Plan and Related Motions Deficiency; Plan Due 5/8/2014. Incomplete Filings due by 5/8/2014. (Voehl, Elizabeth) |
| 04/30/2014 | 6 (3 pgs) | Notice of Meeting of Creditors (Re: related document(s) 4 Auto Assign Meeting of Creditors Chapter 13) (Admin.) (Entered: 05/01/2014) |
| 04/30/2014 | 7 (2 pgs) | Notice of Electronic Filing Procedure (Admin.) (Entered: 05/01/2014) |
| 04/30/2014 | 8 (2 pgs) | Notice of LBR 1007-1 and LBR 3015-2 Deficiency (Re: related document(s) 5 LBR 1007-1, and/or 1007-3, and/or 3015 Case Filing/Plan Deficiency) (Admin.) (Entered: 05/01/2014) |
| 04/30/2014 | 9 (2 pgs) | Notice of Requirement to Complete Course in Personal Financial Management and to File Certification. (Admin.) (Entered: 05/01/2014) |
| 05/08/2014 | 10 (2 pgs) | Motion to Extend Time to File Lists, Schedules and/or Statements filed by Nathan A. Fisher on behalf of Stephen Fox. (Fisher, Nathan) |
| 05/12/2014 | 11 (1 pg) | Order Extending Time to File Chapter 13 Plan, Lists, Schedules and Statements and Requiring Debtor to Give Notice (Related Doc # 10) Incomplete Filings due by 5/27/2014. (Voehl, Elizabeth) |
| 05/13/2014 | 12 (2 pgs) | Notice of Appearance filed by Melissa M. Watson Goode of Glasser and Glasser, PLC on behalf of Kondaur Capital Corporation. (Goode, Melissa) |
| 05/14/2014 | 13 (2 pgs) | BNC certificate of mailing of order (Re: related document(s) 11 Order on Motion to Extend Time to File Lists Schedules and/or Statements LBR 1007-1) (Admin.) (Entered: 05/15/2014) |

| 05/27/2014 | <u>14</u><br>(11 pgs) | Chapter 13 Plan and Related Motions filed by Nathan A. Fisher on behalf of Stephen Fox. (Fisher, Nathan) |
|---|---|---|
| 05/27/2014 | <u>15</u><br>(35 pgs) | Schedule(s) and/or Statement(s), Lists filed by Nathan A. Fisher on behalf of Stephen Fox. (Fisher, Nathan) |
| 06/10/2014 | 16 | Certification of U.S. Trustee Pursuant to Local Rule 2003-1 (B). It is hereby certified that either the debtor or the debtor's counsel has not appeared at the scheduled Section 341 meeting held June 3, 2014. Further note that it does not appear that there will be assets available for distribution to creditors. Filed by Judy A. Robbins 11 (Guzinski, Joseph) |
| 06/11/2014 | <u>17</u><br>(1 pg) | Order of Dismissal for Failure to Attend Meeting of Creditors (Re: related document(s) 16 Certification of U.S. Trustee Pursuant to Local Rule 2003-1B filed by Judy A. Robbins) (Voehl, Elizabeth) |
| 06/13/2014 | <u>18</u><br>(2 pgs) | Notice of Dismissal (Re: related document(s)<u>17</u> Local Bankruptcy Rule Order Dismissing Case) (Admin.) (Entered: 06/14/2014) |
| 06/13/2014 | <u>19</u><br>(2 pgs) | BNC certificate of mailing of order (Re: related document(s) <u>17</u> Local Bankruptcy Rule Order Dismissing Case) (Admin.) (Entered: 06/14/2014) |
| 06/27/2014 | 20 | Case Closed. The Chapter 13 case having been dismissed, the case is hereby closed and all pending adversary proceedings and motions are subject to the effects of dismissal pursuant to 11 U.S.C. Section 349. The Trustee in this case is hereby discharged. (Voehl, Elizabeth) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/22/2014 09:25:58 | | | |
| **PACER Login:** | gg3582:4076226:4057465 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 14-11527-RGM Fil or Ent: filed Doc From: 0 Doc To: 99999999 Format: html Page counts for documents: included |

| Billable Pages: | 2 | Cost: | 0.20 |
|---|---|---|---|